van Gestel,
J. This matter comes before the Court on a motion by the defendants seeking reconsideration of the decision on their summary judgment motion, or, in the alternative, for an order compelling arbitration. The following facts are not in dispute.
*225 BACKGROUND
In June 1999, the plaintiffs, Floyd Wolff, and his children Steven and Lisa (the “Wolffs”), filed an arbitration claim against the defendants[3] (collectively "Fidelity”) before the National Association of Securities Dealers, Inc. (“NASD”). In their claim the Wolffs alleged that in June 1997 Fidelity acted unfairly and deceptively in its allocation to the Wolffs of shares in the initial public offering (“IPO”) of Qwest Communications International, Inc. (“QWST”).
For purposes of this motion, the facts of the claim are not necessary to recite in great detail. It is enough to say that the Wolffs complained that they submitted an offer to Fidelity to purchase 66,000 shares of QWST in its June 23, 1997 IPO. Although first told by Fidelity that they were allocated 39,600 shares of QWST, the Wolffs actually only received 18,000 shares. The Wolffs contend that their allocation was reduced because of a secret, unannounced policy by Fidelity to penalize “flippers,” people who immediately after purchasing at an IPO resell the shares and thereby make a very fast profit.
The language used by the Wolffs in their claim, and in their proceedings before the NASD, referred to Fidelity’s activities as “unfair and deceptive,” much in the manner that a pleading in court would describe, among other things, a claim brought pursuant to G.L.c. 93A.
By a letter, treated by the arbitrators as a motion, dated October 15, 2000, Floyd Wolff asked the NASD as follows:
Claimants request that the panel act on a motion pre-hearing as it applies to the matter of the IPO QWEST.
Claimants move that the panel not adjudicate the claim or issue of whether Fidelity willfully and knowingly engaged in the unfair or deceptive act or business practice of not disclosing to its customers that they might be negatively impacted should they sell an IPO “immediately.”
Then, on October 31, 2000, the opening day of the arbitration, Floyd Wolff, before the hearing on the substance of the claims began, sought to clarity that he had moved for and was permitted not to raise “the issue of a 93A claim.” The three arbitrators indicated on the record that they accepted Floyd Wolffs position. One said: “We’re fine with that issue, be it noted.” Another said: “So the amendment is accepted.” And the third read aloud Floyd Wolffs October 15, 2000 letter, after which Wolff said: “I may claim during the hearing that Fidelity was deceptive in different ways. The kind of relief that I have might be different kinds dealing with the basis of —[4] and will not be a 93A claim.” To which the Presiding Chairman of the panel said: "Thank you very much.”
On November 30, 2000, the NASD arbitration panel made an award denying all of the Wolffs’ claims. No specific reference or language to any G.L.c. 93A claim appears in the award.
In this Court’s determination of Fidelity’s Rule 56 motion, it concluded — for reasons now challenged by Fidelity — that there was no determination of the G.L.c. 93A claim by the arbitrators. This Court now sees no reason to change its conclusion on that point.
The Wolffs concede that pre-dispute agreements to arbitrate their claims with Fidelity were signed. Two parts of those agreements are significant for the purposes of the present motion. The first part reads:
I AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN US CONCERNING ANY ORDER OR TRANSACTION, OR THE CONTINUATION, PERFORMANCE OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US, WHETHER ENTERED INTO BEFORE, ON, OR AFTER THE DATE THIS ACCOUNT IS OPENED, SHALL BE DETERMINED BY ARBITRATION BEFORE A PANEL OF INDEPENDENT ARBITRATORS SET UP BY EITHER THE NEW YORK STOCK EXCHANGE, INC. OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC.[5]
The second part reads:
THIS AGREEMENT AND ITS ENFORCEMENT SHALL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS; SHALL COVER INDIVIDUALLY AND COLLECTIVELY ALL . . . BROKERAGE ACCOUNTS AND OTHER FIDELITY ACCOUNTS WHERE APPROPRIATE WHICH THE UNDERSIGNED MAY OPEN OR REOPEN WITH FIDELITY; AND SHALL INURE TO THE BENEFIT OF FIDELITY’S SUCCESSORS AND ASSIGNS, WHETHER BY MERGER, CONSOLIDATION OR OTHERWISE, AND FIDELITY MAY TRANSFER THE ACCOUNT OF THE UNDERSIGNED TO YOUR SUCCESSORS AND ASSIGNS, AND THIS AGREEMENT SHALL BE BINDING UPON THE HEIRS, EXECUTORS, ADMINISTRATORS, SUCCESSORS AND ASSIGNS OF THE UNDERSIGNED.
DISCUSSION
Motion for Reconsideration.
Fidelity argues that the Court misunderstood the actions of the Wolffs regarding whether the G.L.c. 93A claim could, or would, be heard by the arbitrators. Fidelity suggests that the arbitrators never denied the Wolffs the right to proceed with their c. 93A claim. Rather, Fidelity says, the Wolffs voluntarily withdrew their c. 93A claim just before the start of the arbitration hearing, or perhaps earlier with the October 15, 2000, letter to the arbitrators.
In either event, it remains clear that the arbitrators did not think that they were dealing with a c. 93A claim, and nothing in their decision properly can be read to the contrary.
Fidelity contends that what the Wolffs did with the c. 93A claim constituted impermissible claim splitting that had the effect of barring on res judicata type grounds a further c. 93A claim hearing before this Court.
*226 While there is law that supports Fidelity’s contention under certain circumstances, given the Wolffs pro se posture throughout the arbitration, this Court declines to alter its original ruling.
Motion to Compel Arbitration.
The alternative request by Fidelity, to compel arbitration of the c. 93A claim, presents a much more complex situation.
Neither side disagrees with the legal proposition that the arbitration clauses recited above require arbitration under the Federal Arbitration Act (“FAA”). It is the choice of law clause dictating that Massachusetts law applies, and the holding in Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813 (1982), that a claimant under Sec. 9 of c. 93A could not be forced to arbitrate such a claim even in the face of a contract with an arbitration clause, that adds the complexity.
The requirements of the FAA apply equally in state courts. “Section 3 of the (FAA] requires . . . courts to stay judicial proceedings concerning any dispute covered by an arbitration agreement relating to interstate commerce.” Loche v. Dean Witter Reynolds, Inc., 26 Mass.App.Ct. 296, 300-01 (1988). See also Weston Secs. Corp. v. Aykanian, 46 Mass.App.Ct. 72, 75 (1998). The Wolff/Fidelity transaction in issue involved interstate commerce.
State statutes seeking to limit the enforcement of an arbitration agreement are preempted by the FAA. See Volt Information Sciences v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 477 (1989).
The Federal Arbitration Act, 9 U.S.C. secs. 1-14 (1982) (Act), “create(s) a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.” Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). “Federal law in the terms of the Arbitration Act governs in either state or federal court.” Id. The enforceability of an arbitration clause cannot be precluded by State law. Southland Corp. v. Keating. 465 U.S. 1, 12 (1984).
Martin v. Norwood, 395 Mass. 159, 161-62 (1985).
In Hannon, supra, the FAA was not involved; rather, the SJC was dealing with the Massachusetts arbitration statute found in G.L.c. 251. In finding error in the trial court’s action staying Hannon’s c. 93A, Sec. 9 claim pending arbitration, the SJC focused on the specific language in Sec. 9 reading “[f]ailure to exhaust administrative remedies shall not be a defense to any proceeding under this section” as precluding the issuance of the stay ordered there. Id. at 826. Further, the SJC considered the language in c. 93A, Sec. 9(7), that specifically permits a -stay of c. 93A actions in limited circumstances “as further evidence of the Legislature’s intent to preclude stays in the absence of those limited circumstances.” Id.
This Court does not read Hannon, decided as it was three years before Martin o. Norwood, as State law that can preclude arbitration in a circumstance covered by the FAA. In short, this Court concludes that the Wolffs’ c. 93A claim, assuming it still has life, must be resolved in the binding arbitration called for in the Fidelity agreements.
ORDER
For the foregoing reasons, the defendants’ alternative motion seeking to compel arbitration is ALLOWED.
All further proceedings, including all discovery, in this case are STAYED pending the resolution of the arbitration proceedings hereby ordered.

The statement of claim and other documents by the Wolffs, who appeared pro se, named the respondent simply as “Fidelity Investments." “Fidelity Investments” is merely a trade name by which the defendants do business.

The Court Reporter certified “that a dash as used throughout this transcript is meant to represent an interruption in thought, or between a question and an answer.”

Both parts were printed in capital letters, unlike most of the rest of the agreements.